UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RONALD M.,

                           Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　5:22-CV-00650
　　　　　　　　　　　　　　　　　　　　　　　　　　(BKS/ML)

COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OLINSKY LAW GROUP<br>*Attorneys for Plaintiff*<br>250 S. Clinton Street, Suite 210<br>Syracuse, New York 13202 | HOWARD D. OLINSKY, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>*Counsel for Defendant*<br>6401 Security Boulevard<br>Baltimore, Maryland 21235 | FERGUS KAISER, ESQ. |

**MIROSLAV LOVRIC**, United States Magistrate Judge

## REPORT-RECOMMENDATION

     Plaintiff Ronald M. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Dkt. No. 1). This matter was referred to me for Report and Recommendation by the Honorable Brenda K. Sannes, Chief United States District Court Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in

accordance with General Order 18. Currently before this court are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 10, 12). Plaintiff has also filed a reply brief in this proceeding. (Dkt. No. 13). For the reasons set forth below, this court recommends that Plaintiff's motion for judgment on the pleadings be granted, Defendant's motion for judgment on the pleadings be denied, and this case be remanded to the Social Security Administration ("SSA") for further administrative proceedings.

## I. PROCEDURAL HISTORY

On May 14, 2019, Plaintiff protectively filed applications for DIB and SSI, each alleging disability dating from June 15, 2009.[1] (Administrative Transcript ("T.") 358-375). His applications were denied initially on November 5, 2019, and his request for administrative reconsideration was denied on February 5, 2020. (T. 210-256). Plaintiff then requested a hearing, where he testified by telephone on December 7, 2021 before Administrative Law Judge ("ALJ") Robyn Hoffman. (T. 38-67). The ALJ issued an unfavorable decision on April 26, 2021. (T. 7-29). The Appeals Council denied Plaintiff's request for review on April 13, 2022. (T. 1-6).

Plaintiff commenced this proceeding on June 17, 2022 to challenge the Commissioner's denial of disability benefits. (Dkt. No. 1).

## II. GENERALLY APPLICABLE LAW

### A. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.

---

[1] Plaintiff amended his alleged onset date to June 1, 2019 during his administrative hearing. (T. 53).

2

*Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  To facilitate the court's review, an ALJ must set forth the crucial factors justifying his or her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted).  Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence

may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### B.    Standard for Benefits[2]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-step sequential evaluation process, the decision-maker determines:

---

[2] The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

### III.  FACTS

As of the date of the ALJ's decision, Plaintiff was 53 years old. (T. 359). He was a high school graduate who had received special education assistance with reading and math. (T. 41). At the time of his December 7, 2021 hearing, he resided alone, but had lived at a nursing home for extended periods while receiving rehabilitation services. (T. 45, 51, 54). His employment history included positions as a handyman, janitorial worker and medical transport shuttle driver. (T. 46-51, 413-418).

Plaintiff has not worked since he underwent prostate surgery in June 2019. (T. 51, 671-673). Following his surgery, Plaintiff reported numbness and weakness in his legs that limited his ability to move without assistance. (T. 51-52, 709). At his hearing, Plaintiff stated that he was unsure of the exact cause but attributed some of his difficulties to pre-existing back injuries sustained in falls and motor vehicle accidents. (T. 51, 709). Upon discharge from the hospital, Plaintiff received physical therapy at a residential nursing home facility before returning home. (T. 1170-1176, 1764). Plaintiff continued to receive treatment for weakness in his lower

extremities, including a return to the same inpatient rehabilitation facility in September and October 2019. (T. 1129-1134). Treatment notes from this period reflect Plaintiff engaging in hostile or inappropriate behavior with medical staff and other patients during both inpatient rehabilitation stays, and some staff suggested that Plaintiff was exaggerating the extent of his physical functional limitations after observing him get in and out of bed unassisted to perform daily tasks such as using the bathroom. (T. 1129, 1131, 1170).

The record includes Plaintiff's full treatment history. Rather than summarizing the records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's arguments.

## IV.   THE ALJ'S DECISION

After finding that Plaintiff met the insured status requirements through December 31, 2020, the ALJ found that Plaintiff has not engaged in substantial gainful activity after the amended alleged onset date of June 1, 2019. (T. 13). At step two, the ALJ found that Plaintiff had the following severe impairments: "cervical spine degenerative disc disease, status-post fusion; lumbar spine degenerative disc disease, and a history of inguinal hernia repair." (T. 13-16).

At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment, including Listing 1.15 (disorders of the skeletal spine). (T. 16). Next, the ALJ found that Plaintiff could perform the full range of light work; that is, plaintiff could "occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; sit for up to six hours and stand or walk for six hours, all in an eight-hour workday with normal breaks." (T. 16-20).

In making the RFC determination, the ALJ stated that she considered all of Plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929" and Social Security Ruling ("SSR") 16-3p. (T. 16). The ALJ further stated that she considered opinion evidence and prior administrative medical findings in accordance with 20 C.F.R. §§ 404.1520c and 416.920c. (*Id.*) The ALJ also considered Plaintiff's subjective complaints regarding pain, symptoms, and functional limitations raised during the hearing and in the overall administrative record and found them "not entirely consistent with the medical evidence and other evidence in the record." (T. 17).

The ALJ declined to address Plaintiff's ability to perform past relevant work at step four. (T. 21). She proceeded to step five, and relying on Medical-Vocational Rule 202.13, the ALJ found that there are jobs existing in significant numbers in the national economy that Plaintiff can perform. (*Id.*) Accordingly, the ALJ found that Plaintiff was not disabled from his amended alleged onset date of June 1, 2019 through the date of the ALJ's decision. (*Id.*)

V.   **ISSUES IN CONTENTION**

Plaintiff argues that the ALJ improperly evaluated the persuasiveness of the medical opinion evidence, particularly the August 1, 2019 opinions from Dr. Michael Brodowski and the September 19, 2019 opinion of consultative psychiatric examiner Dr. Dennis Noia. (Dkt. No. 10-1 at 12-27). Plaintiff contends that these procedural errors resulted in an RFC determination that was not supported by substantial evidence. The Commissioner contends that the ALJ's analysis of the medical opinion evidence, Plaintiff's testimony, and the ultimate disability determination were supported by substantial evidence. (Dkt. No. 12 at 8-16). For the following reasons, this court agrees with Plaintiff that the ALJ erred in her evaluation of the persuasiveness of the

medical opinion evidence and recommends that the District Court grant Plaintiff's motion for judgment on the pleadings, deny Defendant's motion for judgment on the pleadings, and remand for further administrative proceedings.

## VI. RFC AND MEDICAL OPINION EVIDENCE

### A. Legal Standards

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945; *see Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions a plaintiff is capable of performing and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241,

267 (N.D.N.Y. 2010); *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris*, 728 F.2d at 588; *LaPorta*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.    Evaluating Medical Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[3] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 82 Fed. Reg. 5844, at 5867–68, 2017 WL 168819 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he

---

[3] Plaintiff's applications were filed on May 14, 2019. (T. 229-235). Thus, the new regulations apply in this case.

or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

**B.     The ALJ's Failure to Explain the Reasoning Behind her Evaluation of the Medical Opinion Evidence Requires Remand.**

The ALJ evaluated a number of opinions from acceptable medical sources in reaching her RFC determination, deeming the September 25, 2019 opinion of state agency psychological consultant Dr. S. Juriga, the November 1, 2019 opinion of state agency medical consultant Dr. B. Patel, the January 27, 2020 opinion of state agency medical consultant Dr. A. Periakaruppan, and the January 28, 2020 opinion of state agency psychological consultant Dr. T. Inman to all be "persuasive." (T. 14-15, 19). All of these consultants reviewed Plaintiff's then-complete medical records but did not have an opportunity to examine him. (T. 129-139, 144-155, 159-173). With regard to medical sources who examined Plaintiff after the alleged onset date, the ALJ found treating physician Dr. Michael Brodowski's August 1, 2019 opinion of Plaintiff's mental health limitations to be "somewhat persuasive," Dr. Brodowski's August 1, 2019 opinion addressing Plaintiff's physical limitations to be "less persuasive," and consultative examiner Dr. Elke Lorensen's September 19, 2019 opinion of Plaintiff's physical functional limitations to be "not persuasive." (T. 14-15, 19-20). Although the ALJ deemed psychiatric consultative examiner Dr. Dennis Noia's September 19, 2019 opinion to be "generally persuasive," she rejected his conclusions regarding Plaintiff's ability to regulate his emotions, control his behavior, and maintain his well-being. (T. 14-15).

Plaintiff contends that remand is required because the ALJ failed to adequately explain her reasoning when evaluating the persuasiveness of Dr. Brodowski's two opinions and Dr. Noia's opinion. Before addressing the merits of that argument, this court will first summarize each of those opinions, along with the ALJ's analysis of each.

11

### 1. Dr. Brodowski's August 1, 2019 Opinion of Plaintiff's Physical Limitations.

Dr. Brodowski treated Plaintiff for several months during his inpatient and outpatient rehabilitation following his June 2019 surgery, with Plaintiff's primary complaint being difficulty walking and otherwise using his legs. (T. 1170-1177).  On August 1, 2019, Dr. Brodowski completed a form entitled "Physical Assessment," on which he listed Plaintiff's diagnosed impairments as including "weakness of both legs, COPD, cervical radiculopathy, lumbar disc disease, and neuropathy." (T. 1082).  Dr. Brodowski opined that Plaintiff could occasionally lift up to ten pounds, but no greater weight. (*Id.*)  He further opined that Plaintiff had a reduced ability to reach with both arms, but no deficits with regarding to gross and fine manipulation of his hands. (*Id.*)

Dr. Brodowski opined that Plaintiff's symptoms would frequently interfere with the attention and concentration required to perform simple work-related tasks, noting on the form that Plaintiff complained of dizziness three to four times per day. (*Id.*)  He opined that Plaintiff could sit for eight hours over the course of the workday but could not stand or walk without experiencing "significant pain." (*Id.*)  He further opined that Plaintiff would need to take multiple unscheduled breaks during the workday.  In Dr. Brodowski's opinion, Plaintiff's impairments would cause him to miss work more than four times per month. (T. 1083).

The ALJ recognized Dr. Brodowski's status as "a treating source familiar with [Plaintiff's] progress" but found his opinion regarding Plaintiff's physical limitations to be unpersuasive. (T. 20).  The ALJ's assessment, in full, states,

> that the limits noted appear to have been temporary, as [Plaintiff] was in inpatient rehab.  Moreover, it is noteworthy that [Plaintiff's] true functioning, as noted [at] his discharge, was not entirely consistent, as staff observed him ambulating and caring for his own activities of daily living.  However, [Plaintiff] exhibited an

inability to ambulate during examinations. Nonetheless, these limitations did not last for a full twelve month[s] after the amended alleged onset date. Accordingly, this opinion is less persuasive in light of evidence available for the entire period under review.

(T. 20).

### 2. Dr. Brodowski's August 1, 2019 Opinion of Plaintiff's Mental Limitations

Dr. Brodowski also completed a form entitled "Mental Capacity Assessment" on August 1, 2019. (T. 1084-1086). He noted that Plaintiff had been diagnosed with bipolar disorder and mood disorder, but it is unclear what mental health treatment, if any, Dr. Brodowski provided while Plaintiff was under his care. (T. 1084).

Utilizing a check-box form with minimal narrative, Dr. Brodowski opined that Plaintiff had "mild" limitations in his ability to ignore or avoid distractions while working, and his ability to work close to or with others without distracting or interrupting them. (T. 1085). He also opined that Plaintiff had "marked" limitations in his ability to sustain an ordinary routine and regular attendance at work, and to work without needing an excessive number or length of breaks throughout the day. (*Id.*) Dr. Brodowski attributed these difficulties to the combination of Plaintiff's physical and mental impairments. (T. 1085).

Dr. Brodowski further opined that plaintiff had "mild" limitations in a number of other areas: the ability to adapt to changes; the ability to manage psychologically based symptoms, the ability to cooperate with others and ask for help when needed, and the ability to understand and respond to social cues. (T. 1085-1086). He also opined that Plaintiff had "moderate" limitations in other areas: handling interpersonal conflicts; responding to requests, suggestions, criticism, correction and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. (T. 1086).

In finding Dr. Brodowski's mental health opinion to be "somewhat persuasive," the ALJ described it as "consistent with the overall medical evidence of record except that the moderate and marked limitations opined are not supported by any evidence, including [Plaintiff's] lack of any ongoing mental health treatment." (T. 15).

### 3. Dr. Noia's September 2019 Consultative Psychiatric Opinion

Dr. Dennis Noia performed a consultative psychiatric examination of Plaintiff on September 19, 2019. (T. 1119-1122). At the time of the examination, Plaintiff was still living at a residential rehabilitation facility. (T. 1119).

During the examination, Dr. Noia observed Plaintiff to be cooperative and responsive to questions, with a "moderately adequate" manner of relating, social skills, and overall presentation. (T. 1121). He demonstrated a coherent and goal-directed thought process with a calm mood and relaxed appearance. (*Id.*) Dr. Noia opined that Plaintiff's attention and concentration were intact, despite demonstrated difficulty with simple counting and arithmetic exercises. (*Id.*) He further opined that Plaintiff's recent and remote memory were intact, with no evident difficulty remembering object and number sequences. (*Id.*)

Based on his examination of Plaintiff, Dr. Noia opined Plaintiff had no limitations understanding, remembering, or applying simple directions and instructions, but appeared to have mild limitations understanding, remembering, or applying complex directions and instructions. (T. 1122). He further opined Plaintiff had no limitations using reasoning or judgment to make work-related decisions and no limitations interacting adequately with supervisors, co-workers, and the public. (*Id.*) In Dr. Noia's opinion, Plaintiff had no limitations sustaining concentration and performing a task at a consistence pace, or with sustaining an ordinary routine and regular attendance at work. (*Id.*) Dr. Noia further opined that Plaintiff had

"mild to moderate" limitations regulating emotions, controlling behavior, and maintaining well-being. (T. 1122). He also opined that Plaintiff had no limitations maintaining personal hygiene or being aware of normal hazards and taking appropriate precautions. (*Id.*)

The ALJ deemed Dr. Noia's opinion to be

> generally persuasive insofar as it was rendered after a thorough examination of [Plaintiff] by a physician with extensive program and professional expertise. However, the mild-to-moderate limitations opined with regard to regulating emotions, controlling behavior, and maintaining well-being are not supported by the record as a whole or the results of the consultative examination itself. Specifically, [Plaintiff's] treating source from CNY Neurological Consulting observed that [Plaintiff] is fully awake, alert, and well-oriented to time, place, and person. His speech is fluent and without dysarthria or dysphasia. He is attentive and able to give a well-organized medical history. His fund of knowledge was intact, and he was able to follow simple and complex commands without difficulty. His recent and remote memory was intact. . . . On neurocognitive testing, [Plaintiff] demonstrated mild cognitive impairment.

(T. 14-15).

"At their most basic, the amended regulations require that the ALJ explain her findings regarding the supportability and consistency for each of the medical opinions, 'pointing to specific evidence in the record supporting those findings.'" *Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *8 (N.D.N.Y. February 22, 2021). An ALJ's failure to explain the supportability and consistency of the medical opinions in the record is procedural error. *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019*); see also Loucks v. Kijakazi,* No. 21-174, 2022 WL 2189293, at *2 (2d. Cir. June 17, 2022) (finding that "the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record"). However, the Second Circuit has recently clarified that an ALJ's procedural error in failing to explain how he or she considered the supportability and consistency of medical opinions in the record does not necessarily preclude

affirmance of the Commissioner's decision. *Loucks*, 2022 WL 2189293, at *2. As the *Loucks* decision points out, it is well-settled that "[d]espite [an] ALJ's procedural error," a reviewing court can affirm if "a searching review of the record assures [the court] that the substance of the [regulation] was not traversed." *Id*., 2022 WL 2189293, at *2 (quoting *Estrella*, 925 F.3d at 96). Thus, while a reviewing court may not affirm the Commissioner's decision based on an impermissible post-hoc rationalization, it may affirm where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole. *See, e.g. John L.M. v. Kijakazi,* No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2-3 (N.D.N.Y. August 18, 2022); *Ricky L. v. Comm'r Soc. Sec*., No. 20-CV-7102, 2022 WL 2306965, at *4 (W.D.N.Y. June 27, 2022).

It is well-established that an ALJ may not generally assert that an opinion is "consistent with" or "supported by" the record, without further elaboration. *See, e.g., Melissa S. v. Comm'r Soc. Sec*., No. 5:21-CV-420 (DJS), 2022 WL 1091608, at *4 (N.D.N.Y. Apr. 12, 2022) ("[T]he ALJ does nothing more than state that the opinion is inconsistent with the record but offers no explanation as to how that is true."); *Kathleen A. v. Comm'r of Soc. Sec. Admin*., No. 3:20-CV-1034 (LEK), 2022 WL 673824, at *6 (N.D.N.Y. Mar. 7, 2022) ("[I]t is not sufficient for an ALJ to merely discuss other medical sources at some point in the decision."). This court agrees with Plaintiff that the ALJ's assessments of the opinions of Dr. Brodowski and Dr. Noia all suffer from this defect, as each is primarily reliant on general references to the broader medical record, with minimal explanation for how the ALJ actually assessed the supportability and consistency of the record.

Where the ALJ attempted to articulate its reasoning, her explanation falls short of the regulatory standard. For example, the ALJ found Dr. Brodowski's evaluation of Plaintiff's

physical limitations to be unreliable because it occurred during inpatient rehabilitation, suggesting that any impairments reflected in the opinion were temporary. (T. 20)  Such explanation omits any reference to Plaintiff's apparent continued difficulties with mobility and balance, as the record includes multiple subsequent appointments with his primary care provider, visits to the emergency room, and a return to inpatient rehabilitation to address these same ambulatory issues. (T. 935-936, 1129, 1148, 1559, 1892-1893, 2407, 2473-2474, 2513-2517).  The ALJ also relied on observations from nursing home staff that Plaintiff was able to leave his bed and use the bathroom without assistance but did not explain why she found such limited physical activity to be inconsistent with a treating physician's opinion that Plaintiff was unable to walk for even an hour over the course of a workday and would require frequent unscheduled rest breaks. (T. 20, 1082, 1129).

      Likewise, the ALJ offered minimal reasoning for her rejection of any of the limitations depicted in the mental health opinions of Dr. Brodowski and Dr. Noia involving Plaintiff's ability to regulate his emotions, control his behavior, and interact with others.  The only purported support offered by the ALJ is a neurological study showing Plaintiff to be "awake, alert, and well-oriented to time, place, and person," with normal cognitive function. (T. 15, 1103-1104).  The ALJ failed to explain what connection these findings had on Plaintiff's ability to regulate his emotions, control his behavior, and engage in ordinary social interaction.  More crucially, this tenuous analysis fails to address relevant record evidence, including multiple examples of Plaintiff engaging in uncooperative, abusive or inappropriate behavior with medical staff or other rehabilitation patients. (T. 1131, 1170, 1910, 1920).  By doing so, the ALJ's analysis diverges from the typical inquiry into these functional areas.  *See, e.g, Daniel J. v. Kijakazi*, No. 3:21-CV-1121 (ATB), 2022 WL 17177619, at *8 (N.D.N.Y. November 23, 2022)

(finding ALJ had substantial evidence to support rejection of opined "moderate to marked limitations in regulating emotions, controlling behavior, and maintaining well-being because there was no indication in the record that the plaintiff was 'uncooperative, labile or exhibit[ing] emotional outbursts at his medical visits.'").

The ALJ also factored Plaintiff's lack of psychiatric treatment after the amended alleged onset date into her evaluation of the mental health opinions but failed to address multiple physician recommendations that Plaintiff begin formal psychiatric treatment and medication for his diagnosed mental impairments. (T. 14, 1104, 1122). Such reasoning does not articulate a clear rationale for dismissing a mental health opinion from an acceptable medical source. *See Peterson v. Astrue*, 2 F. Supp. 3d 223, 236 (N.D.N.Y. 2012) ("faulting a person with a diagnosed mental illness for failing to pursue mental health treatment is a 'questionable practice.'") (internal citation omitted).

Consistent with the Second Circuit's clarification in *Loucks*, this court has conducted a searching review of the record and finds that the gaps in the ALJ's analysis of the relevant record evidence are sizable, as outlined above. Thus, this court cannot be assured that the substance of the regulations governing the evaluation of medical opinion evidence have not been traversed. "Accordingly, without in any way commenting on the merit of the ultimate conclusions reached by the ALJ," this court recommends that the district court remand this matter to the Commissioner "for a more thorough analysis and explanation of the opinion evidence consistent with 20 C.F.R. § 404.1520c" and § 416.920c. *See Allison B. v. Comm'r of Soc. Sec.*, No. 1:21-CV-0969 (CJS), 2023 WL 2726373, at *6 (W.D.N.Y. March 31, 2023*); see generally Claudio-Montanez v. Kijakazi*, No. 21-2027, 2022 WL 17819123, at *2 (2d Cir. Dec. 20, 2022) (explaining that if the ALJ has not set forth good reasons for rejecting a medical opinion, a

18

reviewing court cannot conclude that the error was harmless, and the matter must be remanded for the ALJ to "comprehensively set forth its reasons.").

**ACCORDINGLY**, it is

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) be **GRANTED**; Defendant's motion for judgment on the pleadings (Dkt. No. 12) be **DENIED**' and that the matter be **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: May 9, 2023
       Binghamton, New York

*Miroslav Lovric*
Miroslav Lovric
U.S. Magistrate Judge